Michael R. McCarter
CascadeCarry@outlook.com
53161 Bridge Dr.
La Pine Oregon, 97739
503-339-5654

Plaintiff, appearing *Pro Se*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MICHAEL R. MCCARTER, in his official capacity as president of *Move Oregon's Border* <br> Plaintiff, <br> vs. <br><br> KATE BROWN, in her official capacity as Governor of Oregon, BEV CLARNO, in her official capacity as Secretary of State of Oregon, STEFANIE KIRBY in her official capacity as Baker County Clerk, CHERYL SEELY in her official capacity as Crook County Clerk, RENEE' KOLEN in her official capacity as Curry County Clerk, DANIEL LOOMIS in his official capacity as Douglas County Clerk, BRENDA PERCY in her official capacity as Grant County Clerk, DERRIN ROBINSON in his official capacity as Harney County Clerk, CHRIS WALKER in her official capacity as Jackson County Clerk, KATHERINE ZEMKE in her official capacity as Jefferson County Clerk, RHIANNON HENKELS in her official capacity as Josephine County Clerk, ROCHELLE LONG in her official capacity as Klamath County Clerk, STACIE GEANEY in her official capacity as Lake County Clerk, GAYLE TROTTER in her official capacity as | Case No. 6:20-cv-01048-MC <br><br> COMPLAINT |

COMPLAINT                                         1

Malheur County Clerk, BOBBI CHILDERS in her official capacity as Morrow County Clerk, JENINE MCDERMID in her official capacity as Sherman County Clerk, KIM LINDELL in her official capacity as Chief Elections Officer of Umatilla County, ROBIN A. CHURCH in her official capacity as Union County Clerk, and SANDY LATHROP in her official capacity as Wallowa County Clerk,

Defendants.

## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION REQUESTED

### JURISDICTION

1. This action seeks to vindicate rights protected by the First and Fourteenth Amendments to the U.S. Constitution. Jurisdiction in this case is predicated on 28 U.S.C. §§ 1331 and 1343, this being a case arising under the Constitution of the United States and 42 U.S.C. § 1983. This Court also has jurisdiction under 28 U.S.C §§ 2201 and 2202 to declare the rights of the parties and to grant all further relief found necessary and proper.

### VENUE

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because all of the Defendants are State and local officials working in Oregon. The bulk of the events giving rise to these claims occurred and continue to occur in this District, making venue also proper.

### DIVISIONAL VENUE

3. Eugene Division is a proper venue because Defendant Dan Loomis' place of work in his official capacity as Douglas County Clerk is in Eugene Division. Douglas County is one of the counties where events giving rise to these claims occurred and continue to occur. Plaintiff is subject to personal jurisdiction within the Eugene Division.

4. Each division of the District of Oregon contains workplaces for some of the Defendants. The US District court at Eugene is more centrally located than other US District courts in light of the places of work of the Defendants. More federal judges work in that court than in Medford or Pendleton.

## PARTIES

5. Plaintiff Michael R. McCarter, an Oregon registered voter, Oregon resident, and "chief petitioner" (filer) of county ballot initiatives in multiple counties of Oregon, brings this complaint *pro se* in his official capacity as president of a 501(c)4 named *Move Oregon's Border,* against Defendants. *Move Oregon's Border* is registered with the office of the Secretary of State of Oregon.

6. Governor Kate Brown is named as a defendant in her official capacity as Governor of Oregon.

7. Bev Clarno is named as a defendant in her official capacity as Secretary of State. The Oregon Secretary of State is the chief elections officer of the State of Oregon.

8. The following Defendants are sued in their official capacities as chief elections officials of their respective counties. Chief election officials are responsible for implementing certain state and local election laws. With respect to county ballot initiatives, their responsibilities include verifying signatures, determining whether initiatives qualify to be on the ballot, and certifying them as county measures.

9. Defendant Stefanie Kirby is sued in her official capacity as Baker County Clerk.

10. Defendant Cheryl Seely is sued in her official capacity as Crook County Clerk.

11. Defendant Renee' Kolen is sued in her official capacity as Curry County Clerk.

12. Defendant Daniel Loomis is sued in his official capacity as Douglas County Clerk.

13. Defendant Brenda Percy is sued in her official capacity as Grant County Clerk.

14. Defendant Derrin Robinson is sued in his official capacity as Harney County Clerk.

15. Defendant Chris Walker is sued in her official capacity as Jackson County Clerk.

16. Defendant Katherine Zemke is sued in her official capacity as Jefferson County Clerk.

17. Defendant Rhiannon Henkels is sued in her official capacity as Josephine County Clerk.

18. Defendant Rochelle Long is sued in her official capacity as Klamath County Clerk.

19. Defendant Stacie Geaney is sued in her official capacity as Lake County Clerk.

20. Defendant Gayle Trotter is sued in her official capacity as Malheur County Clerk.

21. Defendant Bobbi Childers is sued in her official capacity as Morrow County Clerk.

22. Defendant Jenine McDermid is sued in her official capacity as Sherman County Clerk.

23. Defendant Kim Lindell is sued in her official capacity as Chief Elections Officer of Umatilla County, a home-rule county.

24. Defendant Robin A. Church is sued in her official capacity as Union County Clerk.

25. Defendant Sandy Lathrop is sued in her official capacity as Wallowa County Clerk.

## URGENCY AND NATURE OF THE CASE

26. The urgency of this matter is related to the August 5, 2020 deadline for signatures for qualifying for the 2020 general election.

27. This is an action to declare unconstitutional, enjoin, and/or modify the combination of the Governor's COVID-19-related executive orders with the requirement in state and/or local law for a threshold (minimum number) of signatures for county ballot initiatives to qualify for the November 3, 2020 ballot.

## FACTS

28. *Move Oregon's Border* did not file a statewide prospective petition. *Move Oregon's Border* filed a distinct prospective petition in each county listed below. To qualify for and appear on the

November 3, 2020 ballot in a county, a "chief petitioner" must present signed petitions to a county clerk's office (or the designated county elections official's office) on or before August 5 according to the state's *County, City, and District Initiative and Referendum Manual* (page 6).[1] According to this manual, by Oregon law, the signing of the petition must be witnessed, in person, by a signature collector.

29. According to ORS 250.205(4), "A petition to initiate a county measure must contain at least the number of signatures of electors residing in the county equal to six percent of the total number of votes cast in the county for all candidates for Governor..." Although this law applies to non-home rule counties, the state's *County, City, and District Initiative and Referendum Manual* (page 5) indicates that this number (6%) is the same for all Oregon counties. This implies that county ordinances or charters have imposed this requirement in home-rule counties, or at least not modified the state requirement.

30. The number of signatures required in 2020 in each relevant county is given in the paragraph below, based on the calculation specified in the paragraph above. In some cases the actual number is one less than the number given due to rounding ambiguity. There may be cases, unknown to the Plaintiff, in which the number below may be slightly off if there were errors in reporting.

31. The *Move Oregon's Border* political movement did not have the capability to begin collecting signatures earlier than it did. This Plaintiff's 501(c)4 *Move Oregon's Border* was founded in response to an analysis that was published April 16, 2019.[2] After a sizable number of citizens heard about and embraced the analysis, a decision to write a prospective petition was made. A

---

[1] https://sos.oregon.gov/elections/Documents/countycitydistrictir.pdf
[2] http://www.greateridaho.org/the_downloads/2020/main/Greater_Idaho_Proposal.pdf

COMPLAINT                                    5

sufficient number of chief petitioners was only found by December 2019. Plaintiff filed prospective petitions in each county (except Klamath County) in January 2020, but counties rejected various forms (versions) of early prospective petitions- in some cases, 7 different versions. A prospective petition from *Move Oregon's Border* was finally approved by a county clerk for circulation on the dates listed below (the actual date might have been the previous business day). For later filings, where required, the plaintiff recruited locals to be the chief petitioners for their county, as noted below:

Douglas County: February 28, 2020, 2955 signatures required.

Umatilla County: March 3, 202, 1447 signatures required. Home-rule county.

Josephine County: March 12, 2020, 2428 signatures required.

Grant County: April 1, 2020, 231 signatures required.

Curry County, April 20, 2020, 692 signatures required.

Harney County: April 25, 2020, 213 signatures required.

Sherman County: April 30, 2020, 60 signatures required. Chief petitioner: Michael Henricksen.

Wallowa County: May 6, 2020, 242 signatures required.

Baker County: May 21, 2020, 496 signatures required.

Union County: May 28, 2020, 705 signatures required.

Morrow County: June 1, 2020, 230 signatures required.

Jackson County: June 3, 2020, 6114 signatures required. Home-rule county.

Klamath County: June 9, 2020, 1695 signatures required.

Jefferson County: June 12, 2020, 531 signatures required.

Malheur County: expected in the first week of July. 539 signatures required. The chief petitioners are Patricia Johnston and Kenneth Enders.

Lake County: Approval to circulate is pending the decision of the Circuit Court of the State of Oregon for the County of Lake. 214 signatures required.

Crook County: Plaintiff Michael McCarter's case in the Circuit Court of the State of Oregon for the County of Crook was dismissed. Approval to circulate will be pending a new case in the same court to be filed by July 6, 2020. *Move Oregon's Border* filed a revised prospective petition with the Crook County Clerk on June 26, 2020. 693 signatures required. Chief petitioner: Shawn Cross.

32. In this case, the "relevant counties" and "the counties concerned" will generally refer to the seventeen counties listed above. None of *Move Oregon's Border*'s prospective petitions were approved for circulation in Coos, Wheeler, and Gilliam counties.

33. Although the required signature count in some counties may seem insignificant in number, the small and scattered population of these counties and the small number of volunteers in these counties makes them equally challenging in comparison to more populous counties.

34. Citizens' fear of contracting SARS-CoV-2 (COVID-19) makes gathering their signatures more difficult, and few volunteers were willing to take the risk to themselves. There is a fear that the clipboard and pen may be covered by viruses.

35. On March 12, 2020, the Governor issued Executive Order 20-05[3] "prohibiting large social, spiritual, and recreational gatherings of 250 people or more, statewide." She "also announced a statewide closure of Oregon K-12 schools from March 16, 2020." (This quote is from executive order 20-10[4]). Closing schools made it harder for parents to find time to gather signatures.

---

[3] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-05.pdf
[4] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-10.pdf

COMPLAINT 7

36. On March 17, 2020, the Governor issued Executive Order 20-07[5] "prohibiting social, spiritual, and recreational gatherings of 25 people or more." The duration of this order was extended by Executive Order 20-14.

37. On March 23, 2020, the Governor issued Executive Order 20-12[6] entitled "Stay Home, Save Lives." This stay-at-home order states:

> I am ordering the following:
> a. Non-essential social and recreational gatherings of individuals outside of a home or place of residence ... are prohibited immediately, regardless of size, if a distance of at least six feet between individuals cannot be maintained.
> b. Individuals are prohibited from patronizing businesses that are closed pursuant to paragraph 2 of this Executive Order, and from engaging in conduct prohibited by prior Executive Orders or inconsistent with guidance provided by the Oregon Health Authority.

The Oregon Health Authority guidance in general was discouraging of actions that would be expected to spread the virus, such as sharing a pen or a piece of paper, which is normally necessary in collecting signatures. More poignantly, it is impossible to hand someone a pen and a clip board from a distance of six feet. The enforcement of the signature requirement, on those wishing to exercise The People's ballot initiative rights, is unconstitutional because it imposes a signature requirement on *Move Oregon's Border* that these executive orders made unachievable for a group that needed to campaign during Spring/Summer 2020.

38. Executive Order 20-12 continues "c. when individuals need to leave their homes or residences, they should at all times maintain social distancing of at least six feet from any person who is not a member of their immediate household...Any person found to be in violation of this Executive

---

[5] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-07.pdf
[6] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-12.pdf

COMPLAINT                                                8

...

Order is subject to the penalties described in ORS 401.990". This executive order, under color of law, also ordered the closure of "non-essential businesses".

39. On March 23, 2020, *Move Oregon's Border* posted a Facebook post criticizing Gov. Brown's executive orders for exceeding the authority given the Governor by law.[7] The Facebook post was quoted and linked by The Oregonian, the newspaper of greatest circulation in Oregon. The Oregonian printed, "The group's Facebook page challenges the governor's social-distancing measures, arguing that Brown's authority even in an emergency doesn't extend to 'literally outlawing dating and socializing (within 6 feet of another person).'"[8] However, Defendants did not accommodate the rights of Plaintiff to ballot access, or reduce the 6% signature requirement, and the 6-foot rule remains a part of executive orders applicable to each county of Oregon to the present day. Plaintiff also emailed a request for relief to each Defendant on June 30, 2020.

40. Beginning May 15, 2020, the counties relevant to this case were moved to "Phase 1" per the Governor's Executive Order 20-25.[9] This order stated "All cultural, civil, and faith-based gatherings of more than 25 people are prohibited. Cultural, civic, and faith-based gatherings of 25 or fewer people are allowed only if a distance of six (6) feet can be consistently maintained between individuals from different households..." However, it also stated, "Stay Home, Save Lives:... It is essential... that individuals continue to stay at or near their home or place of residence, whenever possible... I am ordering... c. When individuals leave their home or place of residence,

---

[7] https://www.facebook.com/groups/GreaterIdaho/permalink/512517262746202/
[8] https://www.oregonlive.com/politics/2020/03/effort-to-move-eastern-oregon-to-idaho-muffled-by-stay-at-home-order-coronavirus-response-further-divides-rural-urban-oregonians-petitioner-says.html
[9] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-25.pdf

COMPLAINT                                9

they should maintain physical distancing of six (6) feet from any person who is not a member of their household..."

41. On June 5, 2020, the Governor issued Executive Order 20-27,[10] which allows some counties to move to "Phase II". Currently, all the relevant counties are in Phase II, having entered Phase II on June 5 or June 6. The only exception is Union County, which returned to Phase I on June 16 or 17 from Phase II, due to an outbreak of COVID-19. According to Executive Order 20-07, in counties in phase II, "individuals may gather for any purpose in groups of up to 50 in indoor spaces, or up to 100 in outdoor spaces, so long as they maintain physical distancing of at least six feet between individuals who are not from the same household." The order also states: "Subsequent Transitions. It is my expectation that neither the state nor any county may transition from Phase II to Phase II unless and until widely available and effective therapeutics or a vaccine become available..."

42. Gathering signatures is not defined as an essential activity under any of the Governor's "Stay Home, Save Lives" orders. The public-health emergency caused by COVID-19 and the various orders issued by the Governor under color of law make it apparently unlawful and practically impossible to gather petition signatures in these counties. Even during Phase II, the Governor requires this distance of six feet to be maintained. It is impossible to politely throw someone a pen and a clip board from a distance of six feet. Presumably, even hands of different individuals must be kept six feet apart, since hands themselves are considered to be a part of an individual's person.

43. The COVID-19 pandemic reduced the number of people who ventured out of their houses for casual reasons, who might have been found on public property where signatures may be gathered.

---

[10] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-27.pdf

COMPLAINT                                                     10

44. Move Oregon's Border held a rally in Roseburg on March 7, 2020 in which approximately 500 people attended,[11] and 389 signatures were collected. Rallies were the main strategy of this group for signature collection, but had to be abandoned because of the Governor's orders. The prime venues for collection of petition signatures historically have been large gatherings, such as county fairs, festivals, and sporting events during warm summer months. None of these were permitted this summer by the Governor's executive orders. Few events occur on public property in the winter, especially in these rural counties, where the passability of roads is not predictable on account of the possibility of storms. Also, the Governor ordered universities closed. *Move Oregon's Border* has not collected the required number of signatures in any county as of the date of this filing, even though it has 9195 members in its largest single-issue Facebook group[12] and has been featured on CNN,[13] Fox News, ABC,[14] CBS, NBC, the Washington Post,[15] etc, and welcomed by the Governor of Idaho[16] and many state legislators.

45. Because of the Governor's orders issued this year, and the public health concerns, in combination with the requirements of Oregon ballot initiative law, it has become impossible this summer for The People of a county to exercise their right under the Oregon Constitution to exercise the legislative power directly through ballot initiatives. The Governor's March 23, 2020 executive order was issued more than four months before the actual due date of August 5. This problem,

---

[11] https://www.nrtoday.com/news/local/greater-idaho-proposal-greeted-with-enthusiasm-at-saturday-rally/article_45165ee3-6c41-54f0-9fcd-7825e522f0ef.html
[12] https://www.facebook.com/groups/GreaterIdaho
[13] https://www.cnn.com/2020/02/18/politics/greater-idaho-oregon/index.html
[14] https://abcnews.go.com/US/oregon-residents-petition-secede-part-state-idaho/story?id=69069056
[15] https://www.washingtonpost.com/nation/2020/02/18/oregon-republicans-idaho/
[16] https://video.foxnews.com/v/6133797882001

COMPLAINT                                   11

and this executive order, was completely unforeseeable in 2019, even for groups that were already prepared to engage in a campaign at that time.

46. On or about March 20, 2020, New York Governor Andrew Cuomo issued an executive order temporarily modifying the signature requirements for ballot access such that candidates will only need to collect 30 percent of the statutory threshold. It also extended deadlines for New Yorkers to register to vote absentee. The Governor of Oregon has shown a willingness to take decisive action via executive order, but has neglected to issue an executive order to cease or relax the enforcement of the signature requirement required to qualify for the ballot.

47. Elsewhere this year, federal judges have issued injunctions to reduce the number of signatures required by states to qualify for the ballot. In the US District Court for the Northern District of Illinois, the signatures required for ballot access was reduced to 10% of the statutory number. In addition, the state's in-person signature requirement was enjoined from having effect. The requirement that an "independent candidate must file 'original sheets which have been signed by the voters and by the circulator, and not photocopies or duplicates of such sheets' is also enjoined."[17] The Governor of Illinois' request for a stay of this injunction was denied by the US Court of Appeals for the Seventh Circuit on June 21, 2020.[18]

48. In the US District Court for the Eastern District of Michigan, the state was required to reduce the threshold for qualifying to 50% of the signatures, and extend the deadline, and permit signatures by electronic mail, finding that "the State's actions in the form of enforcing both the Stay-at-Home Order and the statutory ballot-access requirements operate in tandem to impose a

---

[17] https://clearinghouse.net/chDocs/public/VR-IL-0133-0012.pdf
[18] http://ballot-access.org/wp-content/uploads/2020/06/StayDenied.pdf

COMPLAINT                                    12

severe burden" on the Plaintiff. *Esshaki v. Whitmer*, No. 2:20-cv-10831-TGB, 2020 WL 1910154, at *1 (E.D. Mich. Apr. 20, 2020). The US Court of Appeals for the Sixth Circuit affirmed in part the injunction, agreeing that the state may not enforce its ballot access provisions as-is, but stayed the over-specificity of the injunction. There was dissent against this stay.[19]

49. In the US District Court for the District of Utah, the state's signature requirements were reduced by 32%[20] and an appeal was voluntarily dismissed.[21] In the US District Court for the District of Maryland, the state's signature requirements were reduced from 10,000 to a mere 5,000 for statewide races.[22]

50. By law, the State of Oregon requires that electronic signatures to be accepted as legal signatures in many situations of legal importance.

51. Many states have implemented online petitioning, especially in light of the COVID-19 pandemic. For example, see ARIZONA SECRETARY OF STATE: CITIZEN CLEAN ELECTIONS COMMISSSION, WELCOME TO E-QUAL[23]: "In Arizona, candidates are required to obtain a minimum number of petition signatures to appear on a ballot. Voters interested in assisting Statewide and Legislative candidates can now sign a petition electronically." New Jersey's governor on March 19, 2020 by executive order implemented online petitioning and signature collection for candidates in response to the coronavirus pandemic. *See* EXECUTIVE ORDER NO. 105, March 19, 2020,[24] which states: "The Secretary of State, county clerks, and

---

[19] https://clearinghouse.net/chDocs/public/VR-MI-0075-0012.pdf
[20] https://electionlawblog.org/wp-content/uploads/UT-Garbett-20200429-decision.pdf
[21] https://electionlawblog.org/wp-content/uploads/UT-Garbett-20200502-vol-dismiss.pdf
[22] https://electionlawblog.org/wp-content/uploads/MD-MGP-20200619-consent.pdf
[23] https://apps.azsos.gov/equal
[24] https://www.state.nj.us/state/elections/assets/pdf/candidate/EO-105.pdf

COMPLAINT                            13

municipal clerks shall also accept petitions with signatures collected via an online form created by the Secretary of State, which shall be available for use by Thursday, March 19, 2020."

52. The state should not claim that reducing the signature count threshold will lead to an ungainly number of ballot initiatives on the ballot, because the number of days remaining before the August 5 deadline is relatively small. It is so small that it will not present an opportunity to new entrants. In our experience (described above), it takes one to six months to get permission to circulate. Even after a prospective petition has been drafted that will meet the standards of a specific county clerk, the typical county government will take four weeks to issue an approval to circulate the petition. The reason it takes four weeks is explained as follows. By law, the county clerk has 5 full business days following the day of filing of a prospective petition to determine whether it meets Oregon's constitutional standards. Then she files it with the district attorney, who has five full business days following the day of that filing to file the ballot title. Then there is a required waiting period of seven full business days following the day that the ballot title was filed. Then the petitioner must wait an indeterminate period for the clerk to approve the signature sheets. (cf. the state's *County, City, and District Initiative and Referendum Manual*).

53. County ballot initiative signature campaigns must be completed within two years of a county clerk's approval to circulate a petition, except in Jackson County, where the time limit is one year. Very few county ballot initiatives have been approved to circulate in Oregon within the last two years, so the ballot will not be flooded with old ballot measures if the Court chooses to reduce the signature threshold.

54. Reducing the number of signatures required may reduce the spread of viruses. Conversely, the more signatures we are required to collect, the more our contact with other citizens may be spreading the virus.

55. Libertarian Party of Ohio v Husted, 751 F3d 403, 412 (CA 6, 2014) remarks that "even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief". Additionally, "it is always in the public interest to prevent the violation of a party's constitutional rights." Libertarian Party of Ohio, 751 F3d at 412

56. Consider the effect of the executive orders limiting the maximum size of physical meetings, and keeping people six feet apart. "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." NAACP v. Alabama, 357 U.S. 449, 460 (1958).

57. The Supreme Court made clear that, "whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters ... state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny" Id. at 460-461.

58. "The right to voluntary association ... is an important aspect of the First Amendment freedom" that the Supreme Court "has consistently found entitled to constitutional protection." Lefkowitz v. Cunningham, 431 U.S. 801, 808 (1977).

59. "[Ballot] access restrictions also implicate the right to vote because, absent recourse to referendums, voters can assert their preferences only through candidates or parties or both." Illinois State Board of Elections v. Socialist Workers Party, 440 U.S. 173, 184 (1979).

60. "By limiting the choice available to voters, the State impairs the voters' ability to express their political preferences." Id.

### Injury-in Fact Caused Plaintiff

61. Oregon law, together with the COVID-19 outbreak and the Governor's orders, directly cause injury-in-fact to Plaintiff and Plaintiff's First and Fourteenth Amendment rights.

62. Plaintiff's injuries are fairly traceable to the Oregon laws requiring in person signature collection in great quantity, the coronavirus pandemic, and the Governor's orders described in this action.

63. This Court has the power to properly redress Plaintiff's injuries by issuing prospective injunctive and declaratory relief prohibiting enforcement of state and local laws mandating a minimum number of signatures for verification, qualification, and certification of county ballot initiatives for the November 3, 2020 general election in the relevant counties.

64. This Court may properly redress Plaintiffs' injuries by directing Defendants to verify, qualify, and certify as a county measure for the November 3, 2020 ballot any petitions that have been filed by an agent of Move Oregon's Border and approved for circulation by August 5, 2020 by the chief elections official of their county, without requiring the signatures from voters otherwise required by Oregon law.

## FIRST CAUSE OF ACTION

## FIRST AMENDMENT

65. All previous paragraphs and allegations are incorporated herein.

66. Under present circumstances, in combination with the Governor's executive orders, Oregon's ballot-access requirements violate rights guaranteed to this Plaintiff by the First and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983. They impose a severe burden on Plaintiff's First Amendment rights by impeding his ability to advocate for ballot initiatives in person and by limiting his ability to actually earn a place for his organization's ballot initiatives on the November 3 ballot. Moreover, the six-foot rule burdens First-Amendment freedom of association. Due to these severe burdens, strict scrutiny applies to the challenged restrictions *Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012).

67. A real and actual controversy exists between the parties.

68. Plaintiffs have no adequate remedy at law other than this action for declaratory and equitable relief.

69. Plaintiffs are suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

## SECOND CAUSE OF ACTION

## FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE

70. All previous paragraphs and allegations are incorporated herein.

71. Under present circumstances, Oregon's ballot-access requirements violate rights guaranteed to this Plaintiff by the Equal Protection Clause of the Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

72. A real and actual controversy exists between the parties.

73. Plaintiff has no adequate remedy at law other than this action for declaratory and equitable relief.

74. Plaintiff is suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully prays that this Court:

(1) Assume original jurisdiction over this case;

(2) Issue a temporary restraining order and/or preliminary injunction (i) prohibiting enforcement of state and local laws mandating a minimum number of signatures for verification, qualification, and certification of county ballot initiatives in the relevant counties for Oregon's November 3, 2020 election, (ii) directing Defendants to verify, qualify, and certify as a county measure for the

November 3, 2020 ballot any petitions that have been filed by an agent of *Move Oregon's Border* and that have been approved for circulation by August 5, 2020 by the chief elections official of their county, without requiring the signatures from voters otherwise required by law.

(3) Issue a declaratory judgment stating that, in light of the current public health emergency caused by COVID-19 and executive orders requiring that Oregon citizens stay at home, Oregon's signature requirements for qualification of county ballot initiatives cannot be constitutionally enforced in the relevant counties under the First and Fourteenth Amendments.

(4) Issue a permanent injunction (i) prohibiting enforcement of any state and local laws mandating a minimum number of signatures for verification, qualification, and certification of county ballot initiatives in the relevant counties for Oregon's November 3, 2020 election, (ii) directing Defendants to verify, qualify, and certify as a county measure for the November 3, 2020 ballot any petitions that have been filed by an agent of *Move Oregon's Border* and that have been approved for circulation by August 5, 2020 by the chief elections official of their county, without requiring the signatures from voters otherwise required by law.

(5) Order Defendants to pay to Plaintiff his costs and reasonable attorney's fees under 42 U.S.C. § 1988(b); and

(6) Retain jurisdiction over this matter and order Defendants to provide to Plaintiff any additional relief the Court deems just.

Dated June 30, 2020.

s/Michael McCarter
_____
Michael McCarter

## Verification of Plaintiff

### (Pursuant to 28 U.S.C § 1746)

I, Michael R. McCarter, verify under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:

_Michael R McCarter_
Michael McCarter
Plaintiff