IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL R. MCCARTER, in his official
capacity as president of *Move Oregon's
Border*,

        Plaintiff,

    v.

KATE BROWN, in her official capacity as
Governor of Oregon, et al.

        Defendants.

_____

Civ. No. 6:20-cv-1048-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Plaintiff Michael McCarter, proceeding pro se "in his official capacity as president of Move Oregon's Border," moves for a temporary restraining order or preliminary injunction prohibiting the governor and 17 county clerks from enforcing certain signature requirements relating to several proposed Move Oregon's Border ballot initiatives. The Court first notes that Michael McCarter does not appear to be a licensed attorney. Therefore, he may not represent Move Oregon's Border in this proceeding. The relief sought appears to relate to Move Oregon's Border, not Michael McCarter individually. Putting that issue aside, because Plaintiff has not demonstrated reasonable diligence in collecting the required signatures, he fails to demonstrate any likelihood of success on the merits of his claim. Therefore, Plaintiff's motion for injunctive relief is DENIED.

1 – OPINION AND ORDER

## BACKGROUND

As described in the Secretary of State's Initiative and Referendum Manual, "the initiative and referendum process is a method of direct democracy that allows people to propose laws or amendments to the Constitution or to adopt or reject a bill passed by the legislature." OREGON ELECTIONS DIVISION, STATE INITIATIVE AND REFERENDUM MANUAL 3 ("INITIATIVE MANUAL") (2020), *https://sos.oregon.gov/elections/Documents/stateIR.pdf*. As part of that process, Oregon requires a party seeking to place an initiative on the ballot to require a certain amount of verified signatures. Plaintiff cannot meet those requirements and argues executive orders requiring social distancing prevented it from ever obtaining the requisite signatures.

By the time Plaintiff could begin collecting signatures, a global pandemic had begun, upending all aspects of life. As of July 12, 2020, coronavirus has infected over 12.8 million people and killed over 560,000. *Coronavirus Resource Center*, JOHNS HOPKINS UNIV. & MED., https://coronavirus.jhu.edu/ (last visited July 12, 2020 at 8:38 pm). On March 8, Oregon Governor Kate Brown declared a state of emergency, currently in effect until September 4. Executive Order 20-30 (June 30, 2020), https://www.oregon.gov/gov/Document/executive _orders/eo_20-30.pdf. Fifteen days after declaring a State of Emergency, Governor Brown mandated social distancing and banned all social gatherings "if a distance of at least six feet between individuals cannot be maintained." Executive Order 20-12 (March 23, 2020), https://www.oregon.gov/gov/Documents/executive_orders/eo_20-12.pdf. While Executive Order 20-12 was eventually replaced by later Executive Orders and certain counties could partially reopen, Oregonians still had to maintain physical distance from each other. Executive Order 20-25 (May 14, 2020), https://www.oregon.gov/gov/Documents/executive_orders/eo_20-25.pdf;

Executive Order 20-27 (June 5, 2020), https://www.oregon.gov/gov/Documents/executive_orders/eo_20-27.pdf.

As noted, Plaintiff argues it cannot meet the signature requirements and asks the Court to enjoin the counties from enforcing those requirements during the upcoming election.

## STANDARD OF LAW

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008). The mere possibility of irreparable harm is not enough. Rather, the plaintiff must establish that this harm is likely. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The standards for issuing a temporary restraining order are like those required for a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Ca. 1995).

## ANALYSIS

Plaintiff argues that the effect of COVID-19 and the Governor's Executive Orders in response to slowing the spread of the virus has created a situation in which Move Oregon's Border cannot comply with the deadlines and requirements of the initiative process. This Court's decision, just last week, in *People Not Politicians Oregon, et al., v. Clarno*, 2020 WL 3960440 (D. Or. July 13, 2020) is directly on point.

The right to petition the government is at the core of First Amendment protections and this includes the right to present initiatives. *City of Cuyahoga Falls Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 196 (2003); *see also Meyer v. Grant*, 486 U.S. 414, 421–22 (1988)

3 – OPINION AND ORDER

(explaining that the circulation of ballot petitions is "core political speech"). "Courts generally apply the framework established in *Anderson v. Celebrezze*, as later refined in *Burdick v. Takushi* (the *Anderson-Burdick* framework) when considering the constitutionality of ballot access restrictions." *Reclaim Idaho*, 2020 WL 3490216, at *7 (citing *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992)).

The Court follows other district courts in the Ninth Circuit in finding that analysis outlined in *Angle v. Miller*, 373 F.3d 1122 (9th Cir. 2012) is the proper framework given the unprecedented times during this pandemic. *Reclaim Idaho*, 2020 WL 3490216, at *7; *Fair Maps Nevada v. Cegavske*, No. 3:20-cv-00271-MMD-WGC, 2020 WL 2798018, at *11 (D. Nev. May 29, 2020). In *Angle*, the Ninth Circuit explained that restrictions on the initiative process will burden core political speech if: (1) the regulations restrict one-on-one communication between petition circulators and voters; or (2) the regulations make it less likely that proponents can obtain the necessary signatures to place the initiative on the ballot. 673 F.3d at 1132.

Assuming, without deciding, that the challenged regulations burden core political speech, the Court must then decide what form of review to use when analyzing Defendants' conduct. *See Arizonans for Fair Elections v. Hobbs*, No. CV-20-00658-PHX-DWL, 2020 WL 1905747, at *8 (D. Ariz. Apr. 17, 2020). "Courts apply strict scrutiny when: (1) the proponents of the initiative have been 'reasonably diligent' as compared to other initiative proponents; and (2) when the restrictions significantly inhibit the proponents' ability to place an initiative on the ballot." *Reclaim Idaho*, 2020 WL 3490216, at *8 (quoting *Fair Maps Nevada*, 2020 WL 2798018, at *11). But if Plaintiffs cannot meet either prong, then the Court will apply a lesser form of scrutiny. *See Angle*, 673 F.3d at 1133.

4 – OPINION AND ORDER

Beginning with the first prong, the Court first determines whether Plaintiffs were "reasonably diligent" as compared to other initiative proponents. *Id.* ("We have held that the burden on plaintiffs' rights should be measured by whether, in light of the entire statutory scheme regulating ballot access, reasonably diligent candidates can normally gain a place on the ballot, or whether they will rarely succeed in doing so." (quotations and citation omitted)). Plaintiff presents scant evidence indicating it was reasonably diligent. Plaintiff provided no sworn declaration detailing steps taken to gather signatures. Only in paragraph 44 of the complaint does Plaintiff allege efforts taken to gather signatures. In that paragraph, Plaintiff alleges Move Oregon's Border held a rally in Roseburg, Oregon on March 7, 2020. Compl. ¶ 44. Approximately 500 people attended the rally and Plaintiff collected 389 signatures. *Id.* Plaintiff alleges it has 9195 members on its "single-issue Facebook group." *Id.*

The facts in *People Not Politicians* stand in stark contrast to those present here. There, Plaintiffs gathered over $500,000 in support of the petition, sent out tens of thousands of mailers after the governor issued COVID-19 social distancing orders, and collected over 64,000 signatures. Petitioners there were experienced in placing past initiatives on multiple ballots, and presented sworn declarations outlining plans, undertaken before the pandemic, leading to a reasonable likelihood of success on the current initiative. Plaintiff here presents no such evidence. Holding one rally, collecting less-than 400 signatures, and hosting a Facebook page does not constitute reasonable diligence when compared with other initiative proponents. *Angle*, 673 F.3d at 1133.

As Plaintiff has not been reasonably diligent, the Court analyzes the restrictions on a rational basis review. *Angle*, 673 F.3d at 1134. Defendants "need show only that the rule furthers an important regulatory interest." *Id.* at 1135 (internal quotations and citation omitted).

Defendants have significant regulatory interests in maintaining adherence to the initiative requirements laid out in Oregon's constitution. *Reclaim Idaho*, 2020 WL 3490216, at *8. (citing *Angle*, 673 F.3d at 1135). Additionally, Oregon "undeniably has an important regulatory interest 'in making sure that an initiative has sufficient grass roots support to be placed on the ballot.'" *Angle*, 673 F.3d at 1135 (quoting *Meyer*, 486 U.S. at 425-26). As Plaintiff has not demonstrated reasonable diligence, and because the state clearly has important regulatory interests in enforcing the signature requirements, Plaintiff fails to demonstrate any likelihood of success on the merits.[1]

## CONCLUSION

The Secretary of State has a vital interest in regulating the petition processes. *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). It is also important that the federal courts not take it upon themselves to rewrite state election rules, particularly on the eve of an election. *Republican Nat'l Comm.*, 140 S. Ct at 1207. Because, based on this record, Plaintiff does not present any evidence indicating More Oregon's Border was reasonably diligent in collecting the required signatures, the Court DENIES Plaintiff's motion for emergency injunctive relief.

IT IS SO ORDERED.

DATED this 20th day of June, 2020.

>        /s/ Michael McShane
>        **Michael J. McShane**
>        **United States District Judge**

---

[1] As Plaintiff fails to demonstrate any likelihood of success on the merits, the Court does not address the persuasive arguments several defendants raised in opposition (i.e., that Plaintiff's claims are not ripe, that Plaintiff's requested relief is barred by laches, etc).